# EXHIBIT "1"

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIVIL DIVISION**

SANKET VYAS, as liquidating agent
for and on behalf of Q3 I, L.P.,

      Plaintiff,                                     Case No.:

                                                   Division:

v.

RICHARD B. LEVIN, an individual,
and POLSINELLI PC, a Missouri
Professional Corporation,

      Defendants.

_____/

## COMPLAINT

      Plaintiff Sanket Vyas ("Vyas"), in his capacity as liquidating agent for and on behalf of Q3I, L.P. ("Q3I") files this Complaint against Defendants Richard B. Levin ("Levin") and Polsinelli PC ("Polsinelli") (collectively "Defendants"), stating as follows:

## SUMMARY

      Q3I is a limited partnership formed to facilitate a cryptocurrency trading club. An individual named Michael Ackerman defrauded Q3I, causing it to lose the vast majority of the $35 million paid into the club. Ackerman has plead guilty to criminal fraud.

      Levin is an attorney who was hired by Q3I and its general partner, Q3 Holdings, in 2019 to provide legal guidance to Q3 Holdings with the primary intent being to benefit and protect Q3I and its limited partners. At the time, Levin was a partner with Polsinelli, which marketed Levin as being one of the top cryptocurrency fund specialists in the country.

      Ackerman accomplished his fraud by reporting false returns in the crypto exchange accounts to Q3I and then using those false returns to take unearned "profits" from Q3I pursuant to

a profit participation agreement. In truth, Ackerman was not taking any profit, he was stealing Q3I's deposits.

Ackerman's scheme was not the work of a criminal mastermind. It should have been easily discovered and prevented. But, key failings by Q3I fiduciaries permitted the scheme to thrive. Levin's negligence was a key cog in Ackerman's fraud machine. Levin's uninformed ratification of Ackerman's account-handling and transfers allowed Ackerman to perpetuate a fraud that should have died on the vine shortly after Levin was retained.

Vyas, as liquidating agent for and on behalf of Q3I, brings these claims against Levin and Polsinelli for the damages caused by their professional negligence.

**PARTIES, JURISDICTION, AND VENUE**

1.      This is an action for money damages that exceed $30,000.00, exclusive of attorneys' fees and costs.

2.      Nonparty Q3 Holdings, LLC is a limited liability company formed in Delaware with its principal place of business located in Florida. Q3 Holdings is the general partner of Q3I and is unable to manage the winding up process of Q3I.

3.      Q3I is a limited partnership formed in Delaware with its principal place of business located in Florida. Q3I is insolvent and is winding up its affairs pursuant to the Q3I Limited Partnership Agreement.

4.      Plaintiff, Sanket Vyas ("Vyas"), is a resident of New Orleans, Louisiana. Pursuant to section 9.02(c) of the Q3I Limited Partnership Agreement, Vyas has been appointed as the Liquidating Agent of Q3I to wind up Q3I's affairs.

2

5.      Defendant Richard B. Levin is an individual who, on information and belief, is a resident of Arapahoe, County Colorado. At all material times, Levin was an attorney, Vice President, and Chair of Financial Technology & Regulatory Practice employed by Polsinelli PC.

6.      Polsinelli PC is a nationwide professional corporation organized under the laws of the state of Missouri. Polsinelli PC transacts business in the state of Florida through its office located in Miami.

7.      This Court has personal jurisdiction over the Defendants because the Defendants caused injury to persons within this state arising out of an act or omission by the Defendants outside this state and at or about the time of the injury, the Defendants were engaged in solicitation or service activities within this state. The Defendants were engaged in services within this state because they were hired as the attorneys for and provided legal services to Q3 Holdings, a limited liability company with its principal place of business in Florida, and were hired as the attorneys for and provided legal services to Q3I, a limited partnership with its principal place of business in Florida; Defendants were providing legal advice and services directed to the managers of Q3 Holdings, one of whom resides in Florida, and Defendants were providing legal advice and services to and for the benefit of limited partners of Q3I, many of whom reside in Florida. The Defendants caused injury within this state when they negligently breached their duties to Plaintiff by failing throughout their entire representation to ever attempt to verify the operations, management, or accounts handling methods of Q3 Holdings or Q3I or ever ask the managers or McEvoy to do so. In particular, when Levin was asked by McEvoy whether Ackerman's proposed account handling methods were legally sound and appropriate, Levin stated that he was "completely comfortable" with the way the funds were being handled without ever seeking to verify that the account handling methods were set up in a way to protect Q3I. By ratifying and

3

encouraging the account handling methods and transfers without conducting any diligence or investigation to verify the veracity of them, or asking the fiduciaries to do so, Levin breached his duty of care he owed to Q3I. A reasonably careful attorney would not have failed to seek to confirm the veracity of the account handling methods when asked by Q3I's fund administrator about the propriety of same. The Defendants' negligence was the direct and proximate cause of millions of dollars of lost investments by Plaintiff who relied on Defendants' legal services and advice to its detriment. Additionally this court has personal jurisdiction over Defendants because when a corporation engages in substantial and not isolated activities within this state, or has a business office within the state and is actually engaged in the transaction of business therefrom, service upon any officer or business agent while on corporate business within this state may personally be made, and it is not necessary in such case that the action, suit, or proceeding against the corporation shall have arisen out of any transaction or operation connected with or incidental to the business being transacted within the state.

8.      Venue is proper in this Court because the Firm and its agent Richard Levin were doing business in this state and this is the County where the cause of action accrued.

## GENERAL ALLEGATIONS

9.      In 2017, non-parties Dr. Quan Tran, James Seijas, and Michael Ackerman (the "principals" or "managers") formed an informal cryptocurrency trading club. The club purported to use a proprietary and wildly successful algorithm developed by Ackerman that he would use in the cryptocurrency exchanges to trade on the volatility of cryptocurrency. In truth, there was no successful algorithm. Ackerman merely tricked the club by maintaining sole access to the exchange accounts and reporting false returns. To hide what he was doing from Tran and Seijas, Ackerman sent them doctored screenshots of the account balances in the cryptocurrency trading

4

accounts held at the exchanges. This made it falsely appear that significant profits had been earned on the money transferred to those accounts.

10.     In 2018, Q3 Holdings and Q3I were created to formalize the club.

11.     Q3 Holdings became the general partner of Q3I. Q3 Holdings is managed by three managers: Tran, Seijas, and Ackerman. According to the Q3 Holdings LLC Agreement, no action could be taken by Q3 Holdings without approval by a majority of its managers.

12.     Q3I was formed as the limited partnership, and investors became Q3I's limited partners. Q3I was managed by its general partner Q3 Holdings. Q3 Holdings and Q3I also hired several fiduciaries to oversee their operations and mainly to protect Q3I and its limited partners.

13.     Among the fiduciaries hired by Q3 Holdings and Q3I, was attorney Rick Levin. Levin has since left Polsinelli, but at all times that Levin was engaged as Q3 Holdings and Q3I's attorney, Levin was an attorney with Polsinelli and the Chair of Polsinelli's Financial Technology (FinTech) and Regulatory Practice.

14.     Polsinelli's website defines the FinTech sector as including digital currencies, blockchain technology, robo advisors, and electronic trading platforms, among others. At all relevant times, Polsinelli's website stated that Levin's "practice focuses on helping financial services and technology (FinTech) clients identify and address regulatory issues as they build their business." The website stated that "Polsinelli is at the vanguard" of the changes in FinTech and that Levin's practice "focuses on the representation of early stage and publicly traded companies in the FinTech space, including investment banks, broker-dealers, investment advisors, peer to peer lending platforms, digital currency trading platforms, and alternative trading systems (ATSs), and exchanges."

5

15.     Q3 Holdings and Q3I engaged Levin's legal services. McEvoy, as Q3I's fund administrator, set up recurring phone conferences with Levin, during which Levin provided legal advice to Q3I and Q3 Holdings regarding their operations, management, and account handling methods.

16.     Prior to discovery, Plaintiff does not have access to all correspondence between Levin, Q3 Holdings, and Q3I, because much of Levin's legal services were communicated via telephone conference, so the full scope of Levin's representation will be revealed in discovery. Currently, Plaintiff has documents showing that as Q3 Holdings' and Q3I's attorney, Levin reviewed all the Q3 Holdings and Q3I corporate documents and that Levin knew that Q3 Holdings was the general partner of Q3I, a limited partnership that was set up for the sole purpose of investing limited partners' fiduciary funds into cryptocurrency exchanges for trading. Levin specifically requested the number of and locations of the limited partners of Q3I. Levin set up recurring conference calls with the managers of Q3 Holdings and the fund administrator of Q3I and counseled them on a wide variety of legal advice regarding: securities laws and regulations, account handling methods of Q3I's fiduciary funds, anti-money laundering policies, and recommendations, and provided Q3 Holdings advice when Q3 Holdings discovered that Ackerman was fraudulently stealing Q3I's fiduciary funds. Levin also drafted license agreements to be used by Q3 Holdings and Q3I, legal memoranda, the specific subject matters of which will be revealed in discovery, and on information and belief, assisted in amending corporate documents.

17.     As part of his due diligence in becoming Q3 Holdings' and Q3I's attorney, Levin requested a variety of information from Q3I and Q3 Holdings concerning their operations. Levin was sent all of Q3 Holdings and Q3I's documents, including the Investment Documents, defined below, and answers to questions posed by him.

6

18.     Through his review of the Q3 Holdings and Q3I documents and his communications with the Principals and other fiduciaries such as Q3I's fund administrator Denis McEvoy, Levin was made aware that Q3I was a limited partnership managed by Q3 Holdings and Q3I's limited partners (the "Victims") purchased limited partnership interests in Q3I for the sole purpose of investing in cryptocurrency. Levin was also informed that Q3I was supposedly pursuing a strategy by which it would employ a proprietary algorithm to engage in high-frequency trading of cryptocurrencies on established exchanges.

19.     Importantly, the Investment Documents demonstrated to Levin that Q3 Holdings and Q3I owed fiduciary duties to the Victims, that those duties required them to pursue the investment scheme set forth in the Documents, and that the Q3I account would be a fiduciary account because it would hold funds being managed by Q3 Holdings on behalf of the Victims by their fiduciary. Levin was aware that the Q3I account was a fiduciary account.

20.     Q3I's fund documents represented that money paid by Victims into the Q3I account would be swept into a cryptocurrency exchange. Q3 Holdings, as general manager of Q3I, was to receive 50% of the trading profits and a license fee for the alleged algorithm. The vast majority of the Victims' money was lost because Ackerman reported enormous false returns to Q3I and the limited partners that would have permitted the general partner to receive 50% of the supposed profits. Because the returns were not real, the profits were not real, and the result is that Ackerman was able to take money from Q3I that had not been earned.

21.     In reality, however, the majority of the funds were being misappropriated by Ackerman.

22.     Ackerman, one of the Principals of Q3 Holdings, convinced the other two Principals that transferring Q3I funds from its bank account to the cryptocurrency exchanges and

7

also transferring distributions from the cryptocurrency exchanges to the Q3I bank account would cost too much in transaction fees.

23.     Ackerman proposed an account handling and transfer plan to bypass the supposed fees associated with moving the funds to and from the exchanges.

24.     The account handling and transfer plan was explained as follows: Although the funds deposited from Q3I limited partners are transferred to Q3 Holdings and then to the Principals, in reality the Principals were sending limited partners' investments to the cryptocurrency exchange and buying crypto and then liquidating the cryptocurrencies from the exchanges to send to Q3 Holdings. However, instead of losing fees on both sides of those trades, the Principals would register the transactions in the accounting spreadsheets as such while they move the funds from the Q3I account to the Q3 Holdings account. The enormous profits Ackerman was generating in the cryptocurrency exchanges would cover all the funds the Principals were moving between Q3I and Q3 Holdings.

25.     Ackerman convinced Tran and Seijas that the fees associated with numerous transactions between Q3I's account and cryptocurrency exchanges would greatly depreciate the limited partners' profits and proposed a workaround whereby Ackerman purported to cover all transactions between the Q3I and Q3 Holdings accounts with the supposed profits in the cryptocurrency exchange.

26.     While Seijas and Tran seemed to believe the explanation, it makes no sense. Q3I would have incurred minimal additional transaction fees in transferring funds from the cryptocurrency exchanges to distribute profits because Q3I was engaged in high-frequency trading – i.e., consistently moving in and out of cryptocurrency – as opposed to longer term trades that would have material costs associated with unwinding them.

27.     According to the PPM, Q3I's investment approach "hones in on rapid entry and exists from the market to mitigate the threat of high market volatility …." It also notes that Q3I's proprietary algorithm was supposed to employ uses "informational data points to effectuate short, positional swing trades on a high frequency, high risk mitigation basis …."

28.     Given this trading strategy, any transaction fees related to converting cryptocurrencies to dollars would have been incurred. The only costs associated with distributing profits in a convention manner would have been wire transfer fees, to the extent the cryptocurrency exchanges and the bank did not waive them (as is regularly done). Thus, the "transaction fees" justification for the suspicious transfer of the Victims' funds in the fiduciary account to the Q3 Holdings account is unavailing on its face.

29.     Tran and Seijas on behalf of Q3 Holdings, and McEvoy, on behalf of Q3I, sought counsel with Levin and Polsinelli to investigate the legal propriety of the transfers and account handling implemented by Ackerman to manage Q3I's investment funds.

30.     The dubious nature of Ackerman's explanation of the account handling methods would have been evident to a sophisticated attorney specializing in regulatory and digital assets, such as Levin and Polsinelli. But Levin did nothing to substantiate that the explanation had merit, such as requesting proof that the money diverted from the Victims was consistent with the account balances in the cryptocurrency accounts.

31.     Documents reveal that Q3 Holdings and Q3I specifically sought Levin's counsel that the account handling methods were in compliance with the Investment Documents.

32.     Despite the fact that the Transfers violated the terms of the Q3I Agreement, without doing any investigation on behalf of Q3 Holdings or Q3I to determine the propriety of Ackerman's accounting method or verifying the supposed profits in the exchanges that would be used as

9

warranty for the transfers, and without advising Q3I's fund administrator or the other mangers of Q3 Holdings to confirm the veracity of Ackerman's proposed account handling methods, Polsinelli negligently ratified Ackerman's account handling methods. Rather, Levin, without conducting any diligence whatsoever and without asking other fiduciaries to investigate, blindly ratified Ackerman's account handling methods and told Q3I's fund administrator he was "completely comfortable" with the transfers.

33.     The Principals utilized the account handling methods approved by Levin to account for millions of dollars of transfers from Q3I.

34.     Unbeknownst to the Q3I limited partners or the other two Principals of Q3 Holdings, Ackerman's account handling methods to supposedly avoid fees was a cover to misappropriate Q3I's assets.

35.     Ackerman told the other Principals that the Q3I cryptocurrency exchanges had over $300 million in profits, and that the 15% or more monthly profits were more than adequate to cover the transfers implemented.

36.     In reality, Q3I's trading accounts had a monthly balance averaging about $1.7 million in total assets.

37.     Q3I's funds were not being transferred to bypass unnecessary fees.

38.     Q3I's funds were being systematically misappropriated by Ackerman.

39.     As Q3 Holdings and Q3I's attorney, Levin's stamp of approval of Ackerman's account handling methods and transfers gave Ackerman's actions legitimacy and credibility to withstand any potential scrutiny from the other Principals, Q3I's fund administrator, or limited partners.

40.     Levin's ratification of Ackerman's account handling methods and transfers directly allowed Ackerman to misappropriate Q3I's funds for months without the other Principals or limited partners realizing it.

41.     Ackerman's misappropriation of Q3I's funds could not have been accomplished without Levin and Polsinelli's negligent representation of Q3 Holdings and Q3I and Levin and Polsinelli's negligent ratification and approval of the account handling methods and transfers.

42.     Q3 Holdings and Q3I did not discover the fraud until late-December 2019 or early January 2020, when Seijas and Tran discovered Ackerman's fraud and reported him to the US government, and the US government seized what was left of Q3I's assets and accounts.

43.     As a direct result of Defendants' professional negligence, Q3I and its limited partners have suffered significant damages.

### COUNT I – Professional Negligence
*(against Richard Levin)*

44.     Plaintiff incorporates paragraphs 1 through 43 as if fully set forth herein.

45.     Levin acted as Q3I's attorney when Q3I, through its fund administrator Denis McEvoy, consulted Levin with the purpose of obtaining legal services as evidenced the recurring conference calls and direct correspondence between McEvoy and Levin regarding Q3I's operations, funds, and management.

46.     Plaintiff does not have access to all correspondence between Levin and Q3I, because much of Levin's legal services were communicated via telephone call, so the full scope of Levin's representation will be revealed in discovery. Currently, Plaintiff has documents showing that as Q3I's attorney, Levin reviewed all the Q3I corporate documents and that Levin knew that Q3 Holdings was the general partner of Q3I, which was a limited partnership that was set up for the sole purpose of investing limited partners' fiduciary funds into cryptocurrency

11

exchanges for trading. Levin specifically requested the number of and locations of the limited partners of Q3I. Levin set up recurring conference calls with the managers of Q3 Holdings and the fund administrator of Q3I and counseled them on a wide variety of legal advice regarding: securities laws and regulations, account handling methods of Q3I's fiduciary funds, and anti-money laundering policies. Levin also drafted license agreements to be used by Q3 Holdings and Q3I, legal memoranda, the specific subject matters of which will be revealed in discovery, and on information and belief, assisted in amending certain corporate documents. As such, Levin owed Q3I a duty of care to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession.

47.     In addition, because Levin held himself out to Q3I as having special skill and knowledge related to cryptocurrency and digital assets, Levin owed a duty of care to Q3I that a reasonably careful attorney, acting as such a specialist or possessing that special skill or knowledge, would do under the same or similar circumstances.

48.     In the alternative, if actual privity does not exist between Q3I and Levin, Levin owed Q3I a duty pursuant to Florida law because Q3I was the third-party beneficiary of Levin's engagement by Q3 Holdings. A contract to engage the legal services of Levin existed between Levin and Q3 Holdings. The intent of the contract was to primarily and directly benefit third party Q3I. The parties' intent to use Levin's legal services primarily and directly to benefit Q3I and its limited partners is evidenced by the fact that Denis McEvoy, Q3I's fund administrator and fiduciary who has no role with Q3 Holdings, acted as the main liaison between Q3 Holdings, Q3I, and Levin. Emails in Plaintiff's possession show that McEvoy corresponded directly with Levin and then shared information from Levin with the managers of Q3 Holdings. McEvoy also scheduled recurring conference calls which included McEvoy, Levin, and the managers for Q3

12

Holdings. Levin requested, received, and reviewed all of the corporate documents for both Q3 Holdings and Q3I, and specifically requested information related to the number of and locations of Q3I's limited partners.

49.     There was a breach of the contract when Levin failed to perform his duties in a way that would protect and benefit Q3I. Specifically, when McEvoy consulted with Levin about Ackerman's proposed account handling methods and transfers of Q3I's fiduciary assets, Levin's stamp of approval without verifying the veracity of Ackerman's account handling methods, or even asking McEvoy or the managers of Q3 Holdings to verify the veracity of the methods, allowed Ackerman to steal millions of dollars of Q3I's fiduciary funds under the guise of an approved and legal system. Throughout his entire representation of Q3I, Levin never attempted to verify the operations, management, or accounts of Q3 Holdings or Q3I and never asked the managers or McEvoy to do so.

50.     By ratifying and encouraging the account handling methods and transfers without conducting any diligence or investigation to verify the veracity of them, or asking the fiduciaries to do so, Levin breached his duty of care he owed to Q3I. A reasonably careful attorney would not have failed to investigate the veracity of the purported account handling methods when asked by Q3I's fund administrator about the propriety of them, or at minimum advised Q3I's fund administrator to independently confirm the veracity of same.

51.     Levin's breach caused damage to Q3I by allowing Q3I's fiduciary assets to be misappropriated. The amount of damages is unknown and will be determined at trial.

WHEREFORE, Plaintiff Sanket Vyas, as liquidating agent for and on behalf of Q3 I, L.P. respectfully demand full and final judgment against Defendant Richard Levin, awarding damages together with interest on the judgment at the proper legal rate, plus cost and litigation costs,

expenses, and reasonable attorneys' fees to the extent permitted by law or contract, and for such other relief to which Q3 I, L.P. may be rightly entitled.

### COUNT II – Negligent Misrepresentation
*(against Richard Levin)*
*(Plead in the alternative to Count II)*

52.     Plaintiff incorporates paragraphs 1 through 43 as if fully set forth herein.

53.     In the course of his business, profession, or employment acting as the attorney who was hired to protect Q3I and its limited partners, Levin made a misrepresentation of material fact to Q3I, when Levin told Q3I's fund administrator, Denis McEvoy, that he was "completely comfortable" with the way the Q3I's fiduciary funds were being handled and ratified the account handling methods as legitimate without conducting any diligence or investigation to verify the veracity of the account handling methods.

54.     Levin made the misrepresentation without knowledge of its truth or falsity, or when he should have known the representation was false, because Levin failed to do anything to verify the appropriateness of Ackerman's proposed account handling methods or advise the managers of Q3 Holdings or Q3I's fund administrator to verify the veracity of Ackerman's purported account handling methods. Instead, Levin blindly gave a stamp of approval for Ackerman's fraudulent scheme.

55.     Levin intended to induce another to act on the misrepresentation because Levin knew that Q3I was seeking his advice regarding the legal propriety of how Q3I's fiduciary funds were being handled, and Levin knew that Q3I would rely on Levin's ratification of same.

56.     Q3I, as the injured party, justifiably relied on Levin's misrepresentation to its detriment because Levin's stamp of approval gave Q3I confidence that the Q3I assets were being managed appropriately, which allowed Ackerman to steal millions of dollars from Q3I's account.

14

WHEREFORE, Plaintiff Sanket Vyas, as liquidating agent for and on behalf of Q3I, L.P., respectfully demands full and final judgment against Defendant Richard Levin, awarding damages together with interest on the judgment at the proper legal rate, plus cost and litigation costs, expenses, and reasonable attorneys' fees to the extent permitted by law or contract, and for such other relief to which Q3I, L.P. may be rightly entitled.

<u>**COUNT III – Vicarious Liability**</u>
*(against Polsinelli PC)*

57.    Plaintiff incorporates paragraphs 1 through 56 as if fully set forth herein.

58.    At all relevant times and during the course of the conduct described herein, Levin was employed by Polsinelli, and held himself out to Q3 Holdings and Q3I as acting on behalf of Polsinelli. At all material times, Levin was an agent of Polsinelli, and Polsinelli held Levin out as working on behalf of Polsinelli.

59.    Levin's conduct as set forth herein was undertaken within the scope of his employment with Polsinelli and in the ordinary course of his employments with Polsinelli. Levin's conduct is of the kind he was employed to perform because he was an attorney with Polsinelli, which held Levin out as specializing in regulatory and digital assets laws.

60.    Levin's conduct as described above occurred substantially within the same time and space limited authorized or required by work to be performed by an attorney of Polsinelli.

61.    Because Levin held himself out to Q3 Holdings and Q3I as working on behalf of Polsinelli, the acts and omissions described herein were committed in his capacity as an agent for Polsinelli.

62.    Levin's conduct as described herein was caused by an intent to serve his employer's interests and was connected with its authorized acts.

15

63.     Levin, on behalf of Polsinelli, voluntarily assumed a duty of care to Q3 Holdings and Q3I by acting as their attorney and providing legal representation and advice to them and/or providing legal advice that was intended for Q3I's benefit.

64.     Levin, on behalf of Polsinelli, negligently breached his duty by failing to protect Q3 Holdings and Q3I from Ackerman by utterly failing to verify the operations, management, or accounts of Q3I and by ratifying the account handling methods and transfers of Q3I's assets without verifying the truth of Ackerman's claims regarding the returns and the exchange account balances or asking Q3I's fund administrator or other managers of Q3 Holdings to do so.

65.     Pursuant to the doctrines of respondeat superior and agency, Polsinelli is vicariously liable for Levin's negligence.

WHEREFORE, Plaintiff Sanket Vyas, as liquidating agent for and on behalf of Q3I, L.P., respectfully demands full and final judgment against Defendant Polsinelli PC, awarding damages together with interest on the judgment at the proper legal rate, plus cost and litigation costs, expenses, and reasonable attorneys' fees to the extent permitted by law or contract, and for such other relief to which Q3I, L.P. may be rightly entitled.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues and claims so triable.

Dated: December 3, 2021

Respectfully submitted,

*/s/ Paul Thanasides*
Paul Thanasides
Florida Bar No.: 103039
paul@mcintyrefirm.com
complexlit@mcintyrefirm.com
clservice@mcintyrefirm.com
Christa Queen-Sutherland
Florida Bar No.: 91204

16

christa@mcintyrefirm.com
McIntyre Thanasides Bringgold Elliott
  Grimaldi Guito & Matthews, P.A.
500 E. Kennedy Blvd., Suite 200
Tampa, FL 35602
Telephone: 813.223.0000
Facsimile: 813.225.1221
***Counsel for Plaintiffs***

17

# IN THE CIRCUIT/COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT,
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

Sanket Vyas, as liquidating agent for and on behalf

of Q3 I, L.P.

Plaintiff(s)

Case Number:  21-CA-9606

Division:  L

vs

Richard B. Levin and Polsinelli PC

Defendant(s)

## SUMMONS

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

      **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on defendant(s)  Richard Levin, c/o Nelson Mullins, 1400 Wewatta St, Suite 500, Denver, CO 80202

      Each defendant is required to serve written defenses to the complaint or petition on  Paul Thanasides plaintiff's attorney, whose address is  McIntyre Thanasides, 500 E Kennedy Blvd, Ste 200, Tampa, FL 33602 , within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED** on _12/15/2021_

Attorney: Paul Thanasides

Attorney For: Sanket Vyas, as liquidating agent

Address: McIntyre Thanasides

500 E. Kennedy Blvd., Suite 200

Tampa, FL 33602

Florida Bar Number: 103039

**CINDY STUART**
As Clerk of the Court

By: _V Phillips_

As Deputy Clerk
P.O. Box 3360
Tampa, FL 33601

800 E. Twiggs St.
Room 101
Tampa, FL 33602

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

Florida Rules of Civil Procedure Form 1.902(a) (Revised 02/18/2021)          Page 1 of 3

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con el Coordinador de ADA, Hillsborough County Courthouse, 800 E. Twiggs St., Sala 604, Tampa, Florida 33602, (813) 272-7040, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.**

**IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**Si vous êtes une personne handicapée qui a besoin de mesures d'adaptation pour participer à cette procédure, vous avez droit, sans frais pour vous, à une certaine assistance. Veuillez contacter le coordinateur de l'ADA Hillsborough County Courthouse, 800 E. Twiggs St., Salle 604, Tampa, Florida 33602, (813) 272-7040 au moins 7 jours avant votre comparution prévue au tribunal, ou immédiatement après avoir reçu cette notification si le délai avant la comparution prevue est inférieur à 7 jours; si vous êtes malentendant ou avez un trouble de la parole, appelez le 711.**

**Enpòtan**

Pwosedi legal yo te pran kont ou. Ou gen 20 jou konsekitif ki soti nan dat konklizyon sa a pou ou ranpli yon repons alekri pou plent sa a nan tribinal sa a. Yon apel telefon ki senp se pa ase pou pwoteje ou. Ou oblije ranpli repons alekri ou a, ak nimewo a dosye pi wo a ak non pati yo ki te nonmen isit la, si ou vle tribinal la tande ka w la. Si ou pa ranpli repons alekri ou nan rele egzije a, ou riske pedi koz la ak sale ou, lajan ou, ak pwopriyete ou yo ka mete men sou pita, san okenn lot avi nan tribinal la. Gen lot obligasyon legal epi ou ka mande sevis imedya yon avoka. Si ou pa konnen yon avoka, ou ka rele yon sèvis referans avoka oswa yon biwo ed legal (ki nan lis nan anye telefon).

Si ou chwazi pou ou soumet yon repons alekri tet ou, ou pral bezwen tou voye oswa voye yon kopi repons ekri ou nan fòm sa a an menm tan an tankou fomalite sa a "Avoka Pleyan/Pwokire a" (Pleyan oswa avoka li) non anba a.

**Si ou se yon moun ki enfim ki bezwen akomodasyon pou w kab patisipe nan pwosedi sa a, ou gen dwa, san ou pa bezwen peye okenn lajan, pou w jwenn yon sèten èd. Tanpri kontakte Hillsborough County Courthouse, 800 E. Twiggs St., Sal 604, Tampa, Florida 33602, (813) 272-7040, Kòdonatris pwogram Lwa Ameriken pou Moun ki Enfim yo nan Hillsborough County Courthouse, 800 E. Twiggs St., Sal 604, Tampa, Florida 33602, (813) 272-7040, fè sa omwen 7 jou anvan dat ou gen randevou pou parèt nan Tribinal la, oswa fè sa imedyatman apre ou fin resevwa konvokasyon an si dat ou gen pou w parèt nan tribinal la mwens pase 7 jou; si ou gen pwoblèm pou w tande byen oswa pou w pale klè, rele 711.**

Filing # 139710065 E-Filed 12/03/2021 04:52:14 PM

**IN THE CIRCUIT/COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT,
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

Sanket Vyas, as liquidating agent for and on behalf

of Q3 I, L.P.

Plaintiff(s)

vs

Richard B. Levin and Polsinelli PC

Defendant(s)

Case Number:  **21-CA-9606**

Division:  **L**

**SUMMONS**

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

    **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on defendant(s) Polsinelli PC, c/o NRAI Services, Inc, 1200 S Pine Island Rd, Plantation, FL 33324

    Each defendant is required to serve written defenses to the complaint or petition on Paul Thanasides plaintiff's attorney, whose address is McIntyre Thanasides, 500 E Kennedy Blvd, Ste 200, Tampa, FL 33602 , within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED** on   12/15/2021

Attorney:  Paul Thanasides

Attorney For:  Sanket Vyas, as liquidating agent

Address:  McIntyre Thanasides

500 E. Kennedy Blvd., Suite 200

Tampa, FL 33602

Florida Bar Number:  103039

**CINDY STUART**
As Clerk of the Court

By:  *V Phillips*

As Deputy Clerk

P.O. Box 3360
Tampa, FL 33601

800 E. Twiggs St.
Room 101
Tampa, FL 33602

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

Florida Rules of Civil Procedure Form 1.902(a) (Revised 02/18/2021)                              Page 1 of 3

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con el Coordinador de ADA, Hillsborough County Courthouse, 800 E. Twiggs St., Sala 604, Tampa, Florida 33602, (813) 272-7040, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.**

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**Si vous êtes une personne handicapée qui a besoin de mesures d'adaptation pour participer à cette procédure, vous avez droit, sans frais pour vous, à une certaine assistance. Veuillez contacter le coordinateur de l'ADA Hillsborough County Courthouse, 800 E. Twiggs St., Salle 604, Tampa, Florida 33602, (813) 272-7040 au moins 7 jours avant votre comparution prévue au tribunal, ou immédiatement après avoir reçu cette notification si le délai avant la comparution prevue est inférieur à 7 jours; si vous êtes malentendant ou avez un trouble de la parole, appelez le 711.**

## Enpòtan

Pwosedi legal yo te pran kont ou. Ou gen 20 jou konsekitif ki soti nan dat konklizyon sa a pou ou ranpli yon repons alekri pou plent sa a nan tribinal sa a. Yon apel telefon ki senp se pa ase pou pwoteje ou. Ou oblije ranpli repons alekri ou a, ak nimewo a dosye pi wo a ak non pati yo ki te nonmen isit la, si ou vle tribinal la tande ka w la. Si ou pa ranpli repons alekri ou nan rele egzije a, ou riske pedi koz la ak sale ou, lajan ou, ak pwopriyete ou yo ka mete men sou pita, san okenn lot avi nan tribinal la. Gen lot obligasyon legal epi ou ka mande sevis imedya yon avoka. Si ou pa konnen yon avoka, ou ka rele yon sèvis referans avoka oswa yon biwo ed legal (ki nan lis nan anye telefon).

Si ou chwazi pou ou soumet yon repons alekri tet ou, ou pral bezwen tou voye oswa voye yon kopi repons ekri ou nan fòm sa a an menm tan an tankou fomalite sa a "Avoka Pleyan/Pwokire a" (Pleyan oswa avoka li) non anba a.

**Si ou se yon moun ki enfim ki bezwen akomodasyon pou w kab patisipe nan pwosedi sa a, ou gen dwa, san ou pa bezwen peye okenn lajan, pou w jwenn yon sèten èd. Tanpri kontakte Hillsborough County Courthouse, 800 E. Twiggs St., Sal 604, Tampa, Florida 33602, (813) 272-7040, Kòdonatris pwogram Lwa Ameriken pou Moun ki Enfim yo nan Hillsborough County Courthouse, 800 E. Twiggs St., Sal 604, Tampa, Florida 33602, (813) 272-7040, fè sa omwen 7 jou anvan dat ou gen randevou pou parèt nan Tribinal la, oswa fè sa imedyatman apre ou fin resevwa konvokasyon an si dat ou gen pou w parèt nan tribinal la mwens pase 7 jou; si ou gen pwoblèm pou w tande byen oswa pou w pale klè, rele 711.**

Florida Rules of Civil Procedure Form 1.902(a) (Revised 02/18/2021)          Page 3 of 3