UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANKET VYAS, as liquidating
agent for and on behalf
of Q3I, L.P.,

    Plaintiff,

v.                          Case No. 8:22-cv-71-VMC-CPT

POLSINELLI PC,
and RICHARD B. LEVIN,

    Defendants.

_____/

**ORDER**

This matter is before the Court on consideration of the Motion to Dismiss filed by Defendants Polsinelli PC and Richard B. Levin (Doc. # 40), filed on April 4, 2022. Plaintiff Sanket Vyas filed a response in opposition on May 2, 2022. (Doc. # 45). For the reasons described below, the Motion is denied.

**I.**   **Background**

This case involves a now-defunct cryptocurrency trading club, Q3I, L.P. (Doc. # 37 at ¶ 1). Q3I used an algorithm for cryptocurrency trading created by a man named Michael Ackerman. (Id. at ¶ 17). Although Ackerman represented that his algorithm was "wildly successful," in actuality it did

not result in the returns he advertised. (Id. at ¶¶ 17, 20). According to the amended complaint, Ackerman defrauded Q3I by reporting false returns in the cryptocurrency exchange accounts and then using those false returns to take "profits" from Q3I pursuant to a profit participation agreement. (Id. at ¶¶ 2, 4). Due to Ackerman's fraud, Q3I lost nearly all of the $35 million the limited partners paid into the club. (Id. at ¶ 2). Plaintiff Vyas is the liquidating agent for Q3I. (Id. at 1).

Vyas alleges that Defendant Levin was an attorney at the law firm of Defendant Polsinelli when he was hired in 2019 to "provide legal advice to Q3I to benefit and protect Q3I." (Id. at ¶ 6). At the time, Levin was the chairman of the firm's FinTech and Regulatory Practice, and Polsinelli promoted Levin as widely recognized for his expertise in the fields of digital currency and blockchain technology. (Id. at ¶¶ 25, 26).

After Levin and Polsinelli were retained, a bank involved with Q3I began to question some of the withdrawals being made, so Q3I's Fund Administrator, Denis McEvoy, asked Levin to provide an opinion "concerning Q3I's position regarding the propriety of the way in which [a] fiduciary account was being handled." (Id. at ¶ 34). Levin and

Polsinelli allegedly informed McEvoy that they were "entirely comfortable" with the transfers and the way the accounts were being handled. (Id. at ¶ 35).

According to Vyas, "[t]he only way the transfers [from the fiduciary account] might not have been harmful to Q3I was if Ackerman's reported trading returns were accurate. Yet, Levin prepared Q3I's opinion without verifying the accuracy of Ackerman's reported returns." (Id. at ¶ 7). Vyas alleges that had Levin and Polsinelli performed the required due diligence, they would have "easily" discovered Ackerman's false representations. (Id. at ¶ 8).

Based on these allegations, Vyas brings claims of professional negligence (Count I), negligent misrepresentation (Count II), and breach of fiduciary duty (Count III) against both Levin and Polsinelli. (Id. at 10-16). On April 4, 2022, Polsinelli and Levin filed the instant Motion to Dismiss the amended complaint. (Doc. # 40). Vyas has responded (Doc. # 45), and the Motion is ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250,

1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

**III. Analysis**

    **A.**    ***In Pari Delicto* Doctrine**

Defendants argue that the *in pari delicto* doctrine bars this action. (Doc. # 40 at 3, 7-11). Under Florida law, the doctrine of *in pari delicto* operates to bar legal remedies where both parties are equally in the wrong or where the

plaintiff's wrongdoing exceeds the defendant's wrongdoing. O'Halloran v. PricewaterhouseCoopers LLP, 969 So. 2d 1039, 1041 (Fla. 2d DCA 2007); Turner v. Anderson, 704 So. 2d 748, 751 (4th DCA 1998). In other words, "to assert an *in pari delicto* defense, a defendant must show that the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress." Bailey v. TitleMax of Ga., Inc., 776 F.3d 797, 802 (11th Cir. 2015) (citation and quotation marks omitted). It is an equitable doctrine that precludes a plaintiff who has participated in wrongdoing from recovering damages resulting from that wrongdoing. Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1152 (11th Cir. 2006).

Although the doctrine is an affirmative defense, affirmative defenses may be raised in a motion to dismiss under Rule 12(b)(6) so long as the defense clearly appears on the face of the complaint. See Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984) ("Generally, the existence of an affirmative defense will not support a motion to dismiss, [but] a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.").

According to the amended complaint here, Q3 Holdings, LLC, was the general partner of Q3I and was entitled to a 50% profit share from the club's trades. (Doc. # 37 at ¶ 22). And Ackerman was entitled to 33% of Q3 Holdings' share. (Id.). Ackerman allegedly used his trumped-up returns to "dupe" Q3 Holdings into effectuating a transfer of what it believed to be 50% of the profits to Q3 Holdings, and from there Ackerman would take his cut. (Id. at ¶ 23).

Defendants argue that Q3 Holdings, the sole general partner of Q3I, committed the fraud but that the amended complaint improperly paints the fraud as belonging entirely to Ackerman. (Doc. # 40 at 5). Thus, because Q3 Holdings was itself involved in the fraud, and because Vyas, as the liquidating agent, is the successor-in-interest to Q3 Holdings, he cannot recover under the doctrine of *in pari delicto*. (Id. at 2, 5, 7). In Defendants' view, because Vyas stands in the shoes of the general partner who committed the fraud at issue here, he cannot recover. What's more, Defendants argue that because Q3 Holdings held full authority over all operations of Q3I and received half of the fraudulent

profits, the "sole actor" exception does not apply.[1] (Id. at 11).

Defendants' argument fails. Here, the amended complaint alleges that Ackerman acted alone in victimizing Q3I "and its general partner" and that Ackerman "duped" the general partner into requesting its profits share so that Ackerman might benefit. (Doc. # 37 at ¶¶ 3, 23). While Defendants dispute whether Q3 Holdings was an innocent victim, the Court must take Vyas's allegations as true at this stage of the proceedings. Thus, the *in pari delicto* defense is not apparent from the face of the complaint. And even assuming (without deciding) that Vyas is standing in the shoes of Q3 Holdings, applying the affirmative defense at this stage would require the Court to make factual determinations as to the relative fault of the parties, which is inappropriate at the motion to dismiss stage. See Moecker v. Bank of Am., N.A., No. 8:13-

---

[1] There exists an "adverse interest" exception to the *in pari delicto* defense when the corporation's agent is acting adversely to the interests of the principal. In re Fuzion Techs. Grp., Inc., 332 B.R. 225, 231 (Bankr. S.D. Fla. 2005). But the "sole actor exception" to the adverse interest exception – the exception to the exception — may nevertheless allow an agent's wrongdoing to be imputed to a principal when the agent is the sole representative of the principal. Id. The Court need not determine whether this "exception to the exception" applies because, for the reasons stated herein, the assertion of the defense at this stage of the litigation is premature.

cv-1095-SCB-EAJ, 2013 WL 12159056, at *6 (M.D. Fla. Oct. 21, 2013) (rejecting *in pari delicto* defense as premature at the motion-to-dismiss stage given the factual nature of weighing each party's relative guilt).

For this reason, multiple courts in this District have rejected the *in pari delicto* defense as premature at the motion-to-dismiss stage. See Id.; Pennington v. CGH Techs., Inc., No. 6:19-cv-2056-PGB-EJK, 2021 WL 1053159, at *5 (M.D. Fla. Feb. 12, 2021), report and recommendation adopted, 2021 WL 1053275 (M.D. Fla. Mar. 2, 2021); Fed. Deposit Ins. Corp. for Orion Bank of Naples, Fla. v. Nason Yeager Gerson White & Lioce, P.A., No. 2:13-cv-208, 2013 WL 12200968, at *9 (M.D. Fla. July 22, 2013). The more typical practice in this Circuit is to consider affirmative defenses on summary judgment. Fed. Deposit Ins. Corp., 2013 WL 12200968, at *8.

Thus, because the *in pari delicto* defense is not clearly apparent from the face of the complaint, Defendants' Motion must be denied on this point. See Moecker, 2013 WL 12159056, at *6; Sallah v. Fahrenheit Venture Fund LLC, No. 14-22150-CIV, 2014 WL 12629450, at *8 (S.D. Fla. Sept. 5, 2014) (rejecting application of the defense at the motion-to-dismiss stage because "to the extent the parties dispute the existence of innocent management, shareholders, and

investors, these are factual issues"); <u>Wiand v. EFG Bank</u>, No. 810-cv-241-EAK-MAP, 2012 WL 750447, at *6 (M.D. Fla. Feb. 8, 2012), <u>report and recommendation adopted</u>, 2012 WL 760305 (M.D. Fla. Mar. 7, 2012) (finding that application of the defense would require the court to wade into factual inquiries that are not appropriately considered on a motion to dismiss and so, "confining its analysis to the allegations in the complaint," the defense was not apparent from the face of the complaint).

### B.   **Negligent Misrepresentation Pleading**

Defendants argue that the negligent misrepresentation claim does not meet Rule 9(b)'s heightened pleading standard. (Doc. # 40 at 14-17); <u>see</u> <u>Linville v. Ginn Real Est. Co., LLC</u>, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010) ("Rule 9(b) applies to claims for negligent misrepresentation under Florida law because negligent misrepresentation 'sounds in fraud.'" (citation omitted)).

Vyas does not dispute this general rule but points out that courts will "relax" Rule 9(b)'s requirements for receivers or trustees, who are third-party outsiders with only second-hand knowledge of the fraudulent acts. (Doc. # 45 at 16-17); <u>see</u> <u>Wiand</u>, 2012 WL 750447, at *6 ("Courts relax Rule 9(b)'s heightened pleading requirement for

plaintiffs who are trustees or receivers who are third party outsiders to the fraudulent transactions with only second-hand knowledge of the fraudulent acts." (citation and quotation marks omitted)).

Vyas alleges that he has been appointed the liquidating agent for Q3I "to wind up Q3I's affairs and marshal and liquidate its assets for and on Q3I's behalf" pursuant to Delaware law. (Doc. # 37 at ¶ 11). The Delaware provision cited by Vyas provides that persons winding up a limited partnership's affairs may "in the name of, and for and on behalf of, the limited partnership, prosecute and defend suits" in order to marshal and distribute assets. Del. Code tit. 6, § 17-803(b). Given this directive, the Court agrees that Vyas, as a liquidating agent, should be given the benefit of this "relaxed" version of the Rule because he is performing a similar role to that of a receiver or trustee and has similar second-hand knowledge of the particulars of the fraud. In such circumstances, "Rule 9(b)'s particularity requirement is met if the person charged with fraud will have a reasonable opportunity to answer the complaint and has adequate information to frame a response . . . or if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the

allegations." In re Palm Beach Fin. Partners, L.P., 517 B.R.
310, 322 (Bankr. S.D. Fla. 2013) (internal quotation marks
omitted).

Here, the negligent misrepresentation claim rests on two
bases: (1) Levin and Polsinelli's representation to the Fund
Administrator, McEvoy, that they were "completely
comfortable" with the way the fiduciary account was being
handled; and (2) the underlying "implicit" representation
that they had reviewed the relevant information and had
sufficient knowledge to underpin their opinion. (Doc. # 37 at
¶¶ 61-67). Under the facts of this case, the allegations
sufficiently allege the circumstances constituting the fraud
– who said what to whom and about what subject matter – and
provide Defendants with sufficient information to frame an
answer.

Finally, Defendants argue that Levin's "opinion" cannot
form the basis for a misrepresentation claim. (Doc. # 40 at
16-17). Vyas counters that the actionable misrepresentation
is Levin's implied statement that he reviewed the accounts
and governing documents as part of his due diligence, and
while he is not alleging "that Levin's opinion was
misrepresented to Q3I, he alleges that the facts relating to
Levin's diligence in forming that opinion were misrepresented

11

to Q3I." (Doc. # 45 at 17, 18). While this distinction could have been more clearly drawn in the amended complaint, Vyas did allege that part of his claim is based on Levin's implicit representation that he had performed the required due diligence to draw an informed and educated opinion on the relevant issue. This is sufficient to satisfy Rule 8.

What's more, determining whether a representation is a fact or an opinion requires consideration of all the surrounding circumstances. See Grimes v. Lottes, 241 So. 3d 892, 895-97 (Fla. 2d DCA 2018). Where the representation can be viewed as coming from a person with superior knowledge, the representation should be treated as a fact. Id. To the extent it is unclear whether Levin's ultimate statement about being "completely comfortable" with the accounts was a fact or an opinion, the record is insufficiently developed at this time to make this determination. Defendants' Motion is denied on this ground as well.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   The Motion to Dismiss filed by Defendants Polsinelli, PC and Richard B. Levin (Doc. # 40) is **DENIED.**

(2)   Defendants' answer to the amended complaint is due 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 18th day of May, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE